C. M. GARDNER, Claimant, Appellee, v. EUGENE MARQUIS, Administrator, Appellant.

No. 44007.

OCTOBER 19, 1937.

M. R. Stansell and N. W. Stansell, for appellee.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

ANDERSON, J.—G. W. Gardner, a long time resident of

Clarke County, Iowa, departed this life on November 4, 1934. The claimant, appellee, herein filed a claim against the estate for $3,350 based upon an alleged specific oral contract for labor performed for the said G. W. Gardner during his lifetime. Several defenses were interposed to the claim including a general denial; that if any services were performed as contended by claimant they were rendered gratuitously and without any expectation on the part of either that they were to be paid for; that all services had been fully paid for; that the claim, if any, is barred by the statute of limitations. The claim as filed consisted of three separate items: First, claiming compensation of $150 a year for nine years between December, 1897, and the year 1907; second, claiming compensation for thirteen years from 1907 to 1920 at the rate of $100 a year; third, claiming $50 a year for fourteen years from January, 1920, to November, 1934, the date of decedent's death. The last item above mentioned was withdrawn from the jury by the court and the claim was submitted to the jury upon the first two items resulting in a verdict for the claimant. Motion for a new trial and exceptions to instructions were overruled by the court and judgment was entered upon the verdict. The estate appeals.

The claimant, C. M. Gardner, was a nephew of the decedent, G. W. Gardner. His mother died when he was two years old and he was taken into the home of his uncle, the decedent, and remained there until he was thirteen or fourteen years of age at which time he claims to have entered into an oral contract with the decedent that he would remain with him and perform services for him as and when required during the lifetime of his uncle and, in addition to furnishing the claimant a living and reasonable education that he (G. W. Gardner) would, before or at the time of his death, compensate the said claimant for the services to be performed; that relying on said contract and in acceptance thereof the claimant continued to make his home with the decedent and fully and completely performed the oral contract herein declared upon; that during the first nine-year period he performed manual labor for the said decedent in the operation of a farm, and that said labor or services were of the reasonable value of $150 a year, or a total of $1,350; that at the conclusion of the first nine-year period the claimant was married and removed from the home of the decedent but that he continued to perform services and labor in the farming operations for

his uncle for a period of thirteen years and that the reasonable value of such services was $100 per year, or a total of $1,300; and claimant further contends and claims that he is entitled to $50 a year for services performed for the decedent from January 1, 1920, to the date of his uncle's death in 1934. This latter claim was withdrawn by the court from the consideration of the jury. The decedent died intestate leaving his widow and one child, a daughter, Mrs. Mary Wilson. The said daughter was married in 1894, when she was seventeen years old and left home and was not thereafter a member of her parents' household. The record establishes, without controversy, the performance of the services claimed by the appellee, and that the value thereof was in excess of the amount claimed by the appellee, and the questions to be determined are: Whether the contract as alleged was established by competent evidence; whether the claim had been paid; and whether it was barred by the statute of limitations.

As to the first above propositions the evidence consisted of the following: The wife of claimant testified that she heard a conversation, in which she took no part, between her father and the decedent in which the decedent stated," 'Charlie (the claimant) has been with me since a boy, and I told him the time he went to Omaha (1897) if he would come back and be a son to me, that I would see that when I was gone he got paid for it. * * *' I overheard a conversation later, in 1934, between Mr. Gardner (decedent) and M. R. Stansell in regard to this contract of Charlie's. I took no part in the conversation. There was Mr. and Mrs. G. W. Gardner, Miss Thornton, Mr. Stansell, my husband and myself. Mr. Gardner and Mr. Stansell were visiting and Mr. Gardner made the remark that he wanted some provision made for Charlie. Mr. Stansell asked my husband and I to leave the room which we did. We went into the kitchen and Mr. Stansell asked Mr. Gardner what provisions that he wanted made for Charlie. And he said, 'Charlie has always been a son to me, and I told him once when he went to Omaha that if he would come back and be a son to me that I would see when I was gone that he got paid for it.' ''

Gillum Gardner, a brother of the claimant and having no interest in the controversy, testified that ''on an occasion along in 1897 I overheard a conversation between G. W. Gardner and C. M. Gardner, the claimant, it was when we went to Omaha to-

gether. My father lived in Omaha and we wanted to go there and make him a visit, and Uncle Bill said he did not care if Charlie went but he was afraid he would not come back, and he told Charlie if he would come back and stay with him he would take and treat him as a son and share with him as a son.''

Mrs. G. W. Gardner, wife of the decedent, testified as follows:

''I am the wife of G. W. Gardner. We were married in 1876. I recall overhearing a conversation between my husband and Charlie Gardner, the claimant here, along in 1897, on an occasion when he was going to Omaha and in which I took no part. He (G. W. Gardner) said to Charlie, 'I want you to come back and stay with me as my son. I will do right by you. I want you to stay with me and I want to see that you get paid when I am gone.' ''

A witness, Joe Garwood testified that he had a conversation with the decedent in May, 1934, in which the decedent said to him, ''Joe, don't you think Charlie ought to have something?''

Witness Pearl Yates testified that in 1934 he had a conversation with the decedent. He testified as follows:

''Mr. Gardner and I was talking, and he got to talking about Charlie, and he wasn't feeling very good, and he said, 'Charlie had been awful good to me and ma. I don't know what we would have done without him. He has helped us a lot and I'm going to see that he is paid for it.' '' Another witness, Louise Yates, testified to the same conversation.

Another witness, Pearl Johnson, testified that in a conversation had with G. W. Gardner in 1931, he (Gardner) said Charlie had always been fair to him; had been good to help him, and helped him make what he had and he expected to pay him for it. ▮▮▮ Objections were interposed to much of the foregoing testimony based upon section 11257 of the Code (the dead man statute), and section 11262 of the Code making the wife an incompetent witness to testify to any communication between herself and husband occurring while the marriage relation existed. These objections go to the competency of the witnesses, Mrs. G. W. Gardner, C. M. Gardner, the claimant, and his wife. We do not think there is any merit in the appellant's claim basing error on the admissions of the testimony of these witnesses. The

wife of the deceased was not an incompetent witness under either of the statutes cited. She testifies that she took no part in the conversation between her husband and others in reference to the alleged contract. She does not testify to any communication between herself and husband and she certainly is not an incompetent witness under either of the statutes mentioned. Neither was the wife of the claimant an incompetent witness, nor was her testimony inadmissible under section 11257. This section has many times been construed by this court. In the case of Erusha v. Tomash, 98 Iowa 510, 514, 67 N. W. 390, 391, we said:

"The statute does not prohibit the testimony of a party, nor of the husband or wife of a party, in regard to transactions and communications in which the witness took no part. * * * The fact that a person is interested in the subject-matter of a conversation or transaction, does not, alone, disqualify him, under the statute, to testify in regard to it. He is incompetent only when he took part in it."

This rule has been repeatedly reiterated and affirmed by this court, the last case in which it was noted is in In re Will of E. F. Fish, 220 Iowa 1247, 264 N. W. 123, where prior cases were collected and cited. We conclude that there was sufficient competent evidence establishing the specific oral contract declared upon by the claimant in this case.

The next question as to the claim of payment seems to us, from the record, to also be without merit. The appellant contends first that the long period of time, more than twenty years, from the date of entering into the contract and the performance of the services as claimed by appellee raises a presumption in law that the claim was paid, and that certain checks of the decedent payable to the claimant over the period from 1920 to the death of the decedent should have been admitted in evidence, and would tend to prove payment or at least raise an inference that payment of appellee's claim had been made. This might be true as to that part of the claim covering the last period, but, as we have noted, this part of the claim was withdrawn by the court from the jury upon the theory and fact that a partnership agreement existed between the claimant and the decedent during that period and that, without doubt, the checks offered by the appellant were given in furtherance of the partnership transactions. It might be mentioned that the claimant of-

fered in evidence checks from himself to the decedent covering the same period of time, amounting to $5,277, and that decedent's checks, which appellant claims tend to prove payment amount to $3,488. Then too, we have the testimony of the widow, Mrs. G. W. Gardner, the claimant and his wife, and other competent witnesses that shortly before the death of G. W. Gardner he made declarations and admissions recognizing the claim of the appellee, and that it had not been paid.

As to the presumption of payment because of the long period of time elapsing before the claim was made by appellee that a presumption of payment arises as a matter of law, and that the claim was barred by the statute of limitations, we cannot follow the appellant. Under this record, there was no legal presumption as to payment to overcome. And under the specific provisions of the oral contract the claim did not mature until the death of G. W. Gardner. The appellant contends that the time of payment being on or before the death of the decedent could be matured at any time. But the "on or before" clause of the agreement could not have been exercised by the claimant, it was simply an option which might have been exercised by the debtor, but it appears that he did not choose to so exercise it, and that the debt did not mature until his death.

We have carefully examined the authorities cited and referred to by the appellant and, without unnecessarily extending this opinion, we conclude that there is no authority in this state contrary to our conclusions herein announced on like or similar facts as contained in this record.

The case was very carefully and properly submitted to the jury under instructions as favorable to the appellant as the rules of law would warrant, and the jury found the issues in claimant's favor. No other verdict could have been returned which would have been sustained by the record.

As to the requested instructions by the appellant we conclude that so far as material and proper they were submitted to the jury in the court's instructions, in substance.

We find no reversible error in the record and an affirmance must follow. The appellant's motion to strike the denial of and amendment to appellant's abstract is overruled.—Affirmed.

HAMILTON, C. J., and MITCHELL, STIGER, DONEGAN, SAGER, KINTZINGER, PARSONS, and RICHARDS, JJ., concur.